IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL BLUE, | ) | |
|     Petitioner, | ) | Civil Action No. 12-89 Erie |
| | ) | |
| v. | ) | District Judge Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| ARCHIE B. LONGLEY, | ) | |
|     Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.**     **RECOMMENDATION**

It is respectfully recommended that the petition for a writ of habeas corpus filed by Petitioner, Daniel Blue, be denied.

**II.**     **REPORT**

Petitioner is a federal inmate who is incarcerated at the Federal Correctional Institution, McKean. He contends that the Bureau of Prisons (the "Bureau" or the "BOP"), which is the agency responsible for implementing and applying federal law concerning the computation of federal sentences, see, e.g., United States v. Wilson, 503 U.S. 329, 331 (1992), erred in computing his sentence.

    **A.**     **Relevant Background**

On February 9, 1991, Petitioner was arrested and charged by the State of Ohio with aggravated robbery, felonious assault, and kidnapping. [ECF No. 6 at 4]. On October 31, 1991, while he was awaiting his trial before the Court of Common Pleas of Franklin County, Ohio (the "State Court"), the Grand Jury for the United States District Court for the Southern District of Ohio (the "District Court") filed a one count Indictment charging him with being an Armed Career Criminal, in violation of

1

18 U.S.C. §§ 922(g)(1) and 924(e)(1). This charge arose from his use of a firearm during the February 9, 1991, incident. (He had been convicted of violent felonies on three earlier occasions). [ECF No. 12-2 at 4, ¶ 4].

In November of 1991, the District Court issued a writ of habeas corpus *ad prosequendum* so that Petitioner could appear in federal court to answer the federal charge. The United States Marshals Service ("USMS") took temporary custody of him pursuant to that writ. On November 13, 1991, federal authorities arrested him and then returned him to state authorities that same day. [ECF No. 12-2 at 5, ¶ 6; ECF No. 12-2 at 32].

Because state/local authorities had arrested Petitioner first, he was in the "primary custody" of the State of Ohio. The "primary custody" doctrine developed to provide different sovereigns (in this case the state and the federal governments) with an orderly method by which to prosecute and incarcerate an individual who has violated each sovereign's laws. Ponzi v. Fessenden, 258 U.S. 254 (1922). See, e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); George v. Longley, 463 F.App'x 136, 138 n.4 (3d Cir. 2012). In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until it relinquishes its priority by, *e.g.*, granting bail, dismissal of charges, or parole release. George, 463 F.App'x at 138 n.4. Custody also expires at the end of a sentence. Id.

When Petitioner was in the custody of the federal authorities pursuant to the writs of habeas corpus *ad prosequendum* issued in his case, primary custody over him remained with the State of Ohio.

That is because a prisoner detained pursuant to a writ of habeas corpus *ad prosequendum* remains in the primary custody of the sending sovereign unless and until it relinquishes jurisdiction over him. See, e.g., Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002). The receiving sovereign – in this case, the federal government – is, therefore, considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and/or sentencing him. Id.

On November 27, 1991, Petitioner was found guilty on his state charges. On or around December 2, 1991, the State Court sentenced him to a term of 42-65 years' imprisonment, to be followed by a consecutive six-year sentence for use of a firearm during the offense. [ECF No. 14 at 14-16; ECF No. 12-2 at 5, ¶ 6].

On December 16, 1997, the USMS took custody of Petitioner from state authorities pursuant to a writ of habeas corpus *ad prosequendum*. The next day, a federal jury convicted him on the Armed Career Criminal charge. The USMS then returned him to state authorities. [ECF No. 12-2 at 4-6]. The USMS subsequently obtained custody of him again pursuant to a writ of habeas corpus *ad prosequendum* so that he could attend his federal sentencing hearing. On March 20, 1992, the District Court sentenced Petitioner to 262 months of imprisonment. It expressly directed that the federal sentence was "to run **consecutive** with the two (2) State terms of incarceration." [ECF No. 12-2 at 14 (emphasis added)].

Petitioner's attorney had asked the District Court to impose a federal sentence that would run concurrently with his Ohio state sentences. [ECF No. 12-2 at 20-22]. In rejecting that request, the District Court explained:

> The Court concludes, unfortunately, that Mr. Blue is not capable of being rehabilitated. He has had many experiences with the criminal justice system in which he has had the opportunity to be rehabilitated and conform his actions to the norms of society. He has never done so. Every time he has been convicted, he's been released only to engage in

3

> further violent crimes; and it is remarkable that the consequences have not been even more serious than they have thus far.
>
> The Court feels that if Mr. Blue should ever return to society again, it would be quite likely that he would pose a threat of injury or death to other citizens. The overriding consideration in this case is the protection of society; and thus the Court will sentence the defendant to a term of 262 months incarceration, and that sentence will be **consecutive to any other state or federal sentences to which he may be subject, specifically consecutive to or after the two state terms of incarceration that the assistant United States attorney just referred to in his comments.**

[Id. at 23 (emphasis added)].

Petitioner filed a direct appeal of his federal sentence in which he argued, *inter alia*, that the District Court "erred in ordering [his] federal sentence to run consecutively to his state sentence[.]" United States v. Blue, No. 09-2393, 1993 WL 14978, *1 (6th Cir. Jan. 25, 1993). In January of 1993, the United States Court of Appeals for the Sixth Circuit rejected this claim and affirmed Petitioner's judgment of sentence, holding: "Our review of the applicable statutes, sentencing guidelines, and transcript of the sentencing proceedings satisfies us that the district court did not abuse its discretion in imposing a consecutive sentence." Id. at *3.

The USMS returned Petitioner to state authorities after his sentencing hearing concluded on March 20, 1992. The federal judgment was lodged with the Ohio Department of Corrections as a detainer. [ECF No. 12-2 at 6-7]. Petitioner remained in the custody of state authorities serving the remainder of his state sentence for the next 16 years. On August 28, 2007, the state authorities paroled him and he was released to the USMS pursuant to the federal detainer for service of his federal sentence. The BOP commenced his federal sentence on that date pursuant to 18 U.S.C. § 3585(a). It also determined that Petitioner is not entitled to any credit for time he served in official detention prior to the commencement of his federal sentence under 18 U.S.C. § 3585(b) (known as "prior custody credit") because all of that time was credited against his state sentence. Assuming that Petitioner receives all of

the good conduct time available to him, his current projected release date is September 28, 2026. [ECF No. 12-2 at 7, 11, 29].

In June of 2008, Petitioner filed a motion with the District Court requesting that it "issue a 'nunc pro tunc' sentence pursuant to U.S.S.G. 5G1.3 and credit [him] for the 16 ½ years he served in Ohio State Prisons." [ECF No. 12-3 at 20]. The District Court construed the filing as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. On September 18, 2008, it denied the motion as untimely. The District Court also rejected Petitioner's request that the motion be construed as a habeas petition under 28 U.S.C. § 2241, explaining:

> [P]etitioner asserts in the instant motion that he is entitled to credit for the 16 ½ years' time served on an allegedly related state court conviction pursuant to §5G1.3 of the United States Sentencing Guidelines. He seeks a reduction of his sentence on these grounds. **Petitioner therefore challenges the validity of his sentence, not its execution and his motion is properly brought under 28 U.S.C. § 2255, not 28 U.S.C. § 2241. Further, petitioner may not pursue his claim under § 2241 simply because the statute of limitations has already expired.**

[ECF No. 12-3 at 36-37 (emphasis added)]. Petitioner did not appeal the District Court's decision.

Petitioner next pursued his administrative remedies with the BOP. He requested jail credit for the time that he spent in state custody. When an inmate asks for this type of credit, the BOP interprets it as a request that it retroactively designate the state institution as the correctional institution where he began service of his federal sentence pursuant to its authority under 18 U.S.C. § 3621(b). If the BOP grants the request, it in effect amounts to the imposition of a retroactive (or *nunc pro tunc*) concurrent federal sentence.[1] [ECF No. 12-3 at 50]. The BOP explains this policy in Program Statement[2] ("PS") 5160.05, Designation of State Institution for Service of Federal Sentence:

---

[1] When a federal court imposes a prison sentence, Congress has authorized the BOP to designate "any available penal or correctional facility that meets minimum standards of health and habitability ... whether maintained by the Federal Government or otherwise[.]" 18 U.S.C. § 3621(b). Section 3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment, so long as the factors enumerated in the statute are considered. Barden v. Keohane, 921 F.2d 476, 480-84 (3d Cir. 1990).

5

**Concurrent Service of Federal and State Sentences**

a. Concurrent service of federal and non-federal sentences in a non-federal institution occurs when the Bureau designates a non-federal institution for service of the federal sentence. Ordinarily, the reason for selecting the non-federal institution is that primary custody resided with the non-federal jurisdiction **and the federal sentencing court intended its sentence be served concurrently with the non-federal sentence.**

b. When an inmate is sentenced in both federal and state jurisdictions, care must be taken to ensure that he or she is suitable for federal designation. **Normally, designating a non-federal institution for the inmate is done when it is consistent with the federal sentencing court's intent.** Ordinarily, this intent is made known in one of the following ways:

> (1) Court Order. The sentencing court orders, on the Judgment & Commitment Order or the Judgment in a Criminal Case (J&C), that the federal sentence be served concurrently with a state sentence.
> - - -
> (4) Inmate Request. Occasionally, an inmate may request a *nunc pro tunc* (i.e., occurring now as though it had occurred in the past) designation. As a result of the decision in Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990), the Bureau considers an inmate's request for pre-sentence credit toward a federal sentence for time spent in the service of a state sentence as a request for a *nunc pro tunc* designation.
>
>> (a) In Barden, the court held that the Bureau must consider an inmate's request for concurrent service of the state and federal sentences.
>>
>>> • However, there is no obligation under Barden for the Bureau to grant the request by designating a state institution retroactively as the place to serve the federal sentence.
>>
>> (b) This type of request will be considered regardless of whether the inmate is physically located in either a federal or state institution. Information will be gathered, if available, to include:

---

2  BOP Program Statements are internal agency guidelines, and in many cases the policies set forth therein are "akin to an interpretive rule." Reno v. Koray, 515 U.S. 50, 61 (1995). The BOP policies at issue in this case are contained in Program Statements and are not also published in any federal regulation, and thus are not subject to public notice and comment before adoption. Therefore, they are not entitled to the deference described in Chevron U.S.A. v. National Resources Defense Council, 467 U.S. 837 (1984). They are, however, entitled to deference from this Court so long as they set forth "a permissible construction of" the statutes at issue. Blood v. Bledsoe, 648 F.3d 203, 208 (3d Cir. 2011), cert. denied, 132 S.Ct. 1068 (2012).

> •   a copy of the federal and state J&Cs,
>
> •   the state sentence data record in include jail credit, and
>
> •   any other pertinent information relating to the federal and state sentences.
>
>    - - -
>
> **(f)   The Bureau will not allow a concurrent designation if the sentencing court has already made a determination regarding the order of service of sentence (e.g., the federal sentencing court ordered the sentence to run consecutively to any other sentence, or custody in operation, during any time in which the inmate requests concurrent designation).**

PS 5160.05, Pages 5-7 (emphasis added).

Because in this case the District Court had expressly stated that Petitioner was to serve his federal sentence consecutive to his state sentence, the BOP determined that he was not eligible for a retroactive, or *nunc pro tunc*, designation. [ECF No. 12-2 at 39].

Having had no success before the District Court or the BOP, Petitioner now seeks relief in this habeas case, which he has filed pursuant to 28 U.S.C. § 2241. He challenges the BOP's sentence calculation and contends that he should get credit against his federal sentence for all of the time he served on his state sentence. Section 2241 grants this Court jurisdiction over a claim by a federal prisoner that the BOP is computing his federal sentence improperly. See infra § II.B.3.

Respondent has filed his Answer [ECF No. 12] to which Petitioner has filed a Reply [ECF No. 14].

**B.   Discussion**

A federal habeas court may only extend a writ of habeas corpus to a federal inmate if he demonstrates that "[h]e is in custody in violation of the Constitution or laws of the United States[.]"

7

28 U.S.C. § 2241(c)(3). Petitioner contends that he is in custody in violation of the federal sentencing statutes because the BOP has calculated his sentence incorrectly. The following statutes are relevant to the evaluation of his petition: 18 U.S.C. § 3585(a), which governs the date upon which a federal sentence commences; 18 U.S.C. § 3621(b), which governs the BOP's authority to designate a state prison as a place of confinement for service of a federal sentence; and, 18 U.S.C. § 3585(b), which governs the amount of pre-sentence credit (commonly known as "prior custody credit") that an inmate may receive. The BOP's policies regarding sentence computation are set forth in PS 5880.28, <u>Sentence Computation Manual</u>. Also relevant to this case is PS 5160.05, <u>Designation of State Institution for Service of Federal Sentence</u>.

### 1. Calculation of the date upon which a federal sentence commences

#### (a) Statutory and policy background

Section 3585(a) governs the date a federal sentence commences. It provides:

(a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

The BOP, and not the federal sentencing court, determines the date upon which a federal sentence commences. <u>See</u>, <u>e.g.</u>, <u>Ruggiano</u>, 307 F.3d at 126. Because the statute provides that a sentence commences when an inmate is produced or received *for service of his federal sentence*, the BOP will not commence a sentence earlier than the date it is imposed. [ECF No. 12-2 at 7]. <u>See</u> also PS 5880.28, Chapt. 1, Page 13; <u>United States v. LaBeille-Soto</u>, 163 F.3d 93, 98 (2nd Cir. 1998) ("We see nothing in [§ 3585(a)] to indicate that the court is permitted to order that the sentence be deemed to have commenced on an earlier date. Indeed, the determination of the precise date on which a sentence begins

8

appears to have been intended to be a ministerial decision that depends on the timing of the defendant's arrival at the appropriate place with respect to the sentence that is to be served, and we have held that after a defendant is sentenced, it falls to the BOP, not the district judge, to determine when a sentence is deemed to commence[.]") (internal quotations and brackets omitted).

When an inmate is only facing service of a federal sentence, the application of § 3585(a) is straightforward. The BOP will designate the inmate to a federal detention facility and it will calculate the federal sentence to have commenced on the date it was imposed. PS 5880.28, Chapt. 1, Page 12. Oftentimes, however, as in the instant case, an inmate is subject to multiple sentences, *e.g.*, at the time his federal sentence is imposed he is or will soon be subject to a state sentence. In that case, the federal and state governments must resolve where and/or in what order the inmate will serve his multiple sentences. As discussed above, at common law the "primary custody" doctrine developed to assist the sovereigns in making these determinations and to provide an orderly method by which to prosecute and incarcerate an individual that violated the law of more than one sovereign. Once again, the primary custody doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until it relinquishes its priority by, *e.g.*, granting bail, dismissing the charges, releasing the individual to parole or at the expiration of his sentence. See, e.g., George, 463 F.App'x at 138 n.4

The BOP has incorporated the common law primary custody doctrine into its policies. Thus, if the federal government has primary custody of an inmate on the date his federal sentence is imposed, the federal government is entitled to have that inmate serve his federal sentence upon imposition. In such a

case, the BOP will designate the inmate to a federal detention facility for service of the federal sentence and will calculate his federal sentence to have commenced on the date the federal sentencing court imposed it, even if at that same time the inmate is serving a concurrent state sentence. PS 5880.28, Chapt. 1, Pages 12-13.

If, as was the case here, the inmate is in the primary custody of the state when his federal sentence is imposed, and if his federal sentence is consecutive to any state sentence, the inmate will be returned to the state after federal sentencing. The BOP will commence the inmate's federal sentence under § 3585(a) when the state relinquishes its priority and releases him to federal custody. PS 5880.28, Chapt. 1, Pages 12-13, 31-33; see also PS 5160.05, Pages 2-12. If, however, the inmate is in the primary custody of the state and the federal sentencing court orders that he serve his federal sentence concurrently with any state sentence, the BOP will return custody of the inmate to the state, commence the federal sentence, and designate the state facility as the place of service of the federal sentence pursuant to its authority under § 3621(b). PS 5880.28, Chapt. 1, Page 13, 32A-33; PS 5160.05, Pages 2-12.

### (b) The BOP did not violate § 3585(a) in commencing Petitioner's federal sentence on August 28, 2007

The record establishes that Petitioner was in the primary custody of the State of Ohio on the date of his federal arrest. On the date the District Court imposed his federal sentence (March 20, 1992), he was "on loan" to the USMS pursuant to a writ of habeas corpus *ad prosequendum*. Therefore, the BOP policy that directs that a prisoner's federal sentence commences upon imposition if he "is in exclusive federal custody (not under the jurisdiction of a federal writ of habeas corpus ad prosequendum)," does not apply to Petitioner. PS 5880.28, Chapt. 1, Page 12.

On August 27, 2008, the State of Ohio relinquished its primary custody over Petitioner and he was "received in [federal] custody awaiting transportation to" a federal facility to serve the sentence the District Court imposed. Because the District Court had ordered that he serve his federal sentence consecutive to his state sentence, the BOP properly commenced his federal sentence on August 27, 2008, pursuant to § 3585(a) and applicable policy. See PS 5880.28, Chapt. 1, Pages 12-13, 31-33 and PS 5160.05, Pages 2-12.

### (c) The BOP did not abuse its discretion in denying Petitioner a retroactive, or *nunc pro tunc*, concurrent designation under § 3621

When Petitioner challenged his sentence computation in the BOP's administrative review process, the BOP conducted a Barden v. Keohane review to determine whether he was eligible to receive a retroactive, or *nunc pro tunc*, concurrent designation under 18 U.S.C. § 3621. The BOP determined that it would not grant him the designation because the District Court expressly stated that he was to serve his federal sentence **consecutive** to his state sentence. [ECF No. 12-2 at 39]. The BOP's decision was not an abuse of its discretion. It was in accordance with the federal sentencing statutes and applicable agency policy, PS 5160.05, Pages 5-7, and there is no basis for this Court to disturb it.

### 2. Calculation of prior custody credit under § 3585(b)

Section 3585(b) provides:

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

**That has not been credited against another sentence.**

11

(Emphasis added).

The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. Wilson, 503 U.S. at 337 (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). Thus, the BOP may not grant prior custody credit under § 3585(b) for time that has been credited against another sentence. See, e.g., Rios v. Wiley, 201 F.3d 257, 272 (3d Cir. 2001); United States v. Vega, 493 F.3d 310, 314 (3d Cir. 2007).

The BOP has determined that Petitioner is not entitled to any prior custody credit under § 3585(b) because all of the time that he served in official detention during the relevant time period (that is, prior to August 27, 2008 (the date his federal sentence commenced)), was credited against his state sentence. [ECF No. 12 at 13; ECF No. 12-2 at 11]. Thus, the BOP is statutorily precluded from granting Petitioner any sentencing credit under § 3585(b) for time he spent in official detention prior to August 27, 2008. Rios, 201 F.3d at 271-76; Vega, 493 F.3d at 314 (the BOP did not err when it disallowed credit under § 3585(b) because the time at issue had been credited against the petitioner's state sentence).[3]

### 3. Petitioner Is Not Entitled To Any Additional Sentencing Credit

Petitioner argues that the District Court erred in not applying U.S.S.G. § 5G1.3 and adjusting his term of imprisonment for time already served on his state sentence. This Court does not have jurisdiction to consider this claim. "Federal courts are courts of limited jurisdiction. They possess only

---

[3] The BOP has created a limited exception to § 3585(b)'s rule against double credit in accordance with the decisions in Kayfez v. Gasele, 993 F.2d 1288 (7th Cir. 1993) and Willis v. United States, 438 F.2d 923 (5th Cir. 1971). Pursuant to Kayfez, the BOP will grant to a federal prisoner an amount of qualified double credit if the following conditions are present: (1) the non-federal and federal sentences are concurrent; (2) the raw effective full term ("EFT") date of the non-federal term is later than the raw EFT of the federal term; and (3) the non-federal raw EFT, after application of qualified non-federal presentence time, is reduced to a date that is earlier than the federal raw EFT date. PS 5880.28, Chapt. 1 at Pages 22B-24. Pursuant to Willis, the BOP will award an amount of non-federal presentence credit if the following conditions are present: (1) the non-federal and the federal sentences are concurrent; and (2) the non-federal raw EFT is either the same or earlier than the federal raw EFT. Id. Neither Kayfez nor Willis applies to this case because Petitioner's federal sentence was not concurrent with his state sentence.

that power authorized by Constitution and statute[.]" Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). "Two federal statutes, 28 U.S.C. §§ 2241 & 2255, confer federal jurisdiction over habeas petitions filed by federal inmates." Id. "The 'core' habeas corpus action is a prisoner challenging the authority of the entity detaining him to do so, usually on the ground that his predicate sentence or conviction is improper or invalid." McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010). That type of habeas action is brought before the district court that sentenced the prisoner by way of a motion filed under 28 U.S.C. § 2255, which permits a federal prisoner to challenge his judgment of sentence "upon the ground that [it] was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" In contrast, § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence," McGee, 627 F.3d at 935, such as, for example, the way in which the BOP is computing his sentence. See, e.g., Barden, 921 F.2d at 478-79. Such petitions are filed in the federal court of the judicial district where the federal prisoner is incarcerated. Thus, while this Court has jurisdiction under § 2241 to consider Petitioner's claims that the BOP has erred in computing his sentence, it does not have jurisdiction over his claim that the District Court erred in imposing it.

Section 2255, in what is commonly referred to as its "savings clause" or "safety valve," does provide that "[a]n application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to [§ 2255], shall not be entertained if it appears that the applicant has failed to apply for relief by motion [to vacate sentence pursuant to § 2255], to the court which sentenced him, or that such court has denied him relief, **unless it appears that the remedy by motion is**

13

**inadequate or ineffective to test the legality of his detention**." 28 U.S.C. § 2255(e) (emphasis added). Petitioner contends that § 2255's remedy is "inadequate or ineffective" in this case.

The United States Court of Appeals for the Third Circuit Court has found the remedy under § 2255 to be "inadequate or ineffective" only in extremely limited circumstances. "A section 2255 motion is not 'inadequate or ineffective' merely because the petitioner cannot meet the stringent gatekeeping requirements of section 2255 [and file another post-conviction motion in the district court where he was convicted and sentenced], Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002), or because the sentencing court does not grant relief, Cradle v. United States ex rel. Miner, 290 F.3d 536, 539 (3d Cir. 2002) (per curiam)." David v. Grondolsky, 305 F.App'x 854, 855-56 (3d Cir. 2009) (per curiam). See, e.g., Young v. Yost, 363 F.App'x 166, 169 (3d Cir. 2010) (per curiam) ("Section 2255 is not 'inadequate or ineffective' merely because the [court of appeals] denied [the petitioner] permission to file a second or successive § 2255 motion raising his present claim.").

In the Third Circuit, the seminal case on the application of § 2255's savings clause is In re Dorsainvil, 119 F.3d 245 (3d Cir. 1997). In that case, the Third Circuit Court held that the "safety valve" provided under § 2255 is extremely narrow and applies in the "uncommon situation" in which "a prisoner who had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate[.]" Dorsainvil, 119 F.3d at 248, 251. "Put another way," under the narrow holding of Dorsainvil, "§ 2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255

[regarding the filing of a successive motion] because the new rule is not one of constitutional law." Trenkler v. Pugh, 83 F.App'x 468, 470 (3d Cir. 2003).

Petitioner's case does not meet the Dorsainvil criteria. Therefore, he cannot challenge the sentence the District Court imposed in this habeas action. See Savage v. Zickefoose, 446 F.App'x 524, 525-26 (3d Cir. 2011) ("To the extent that [the petitioner] alleged that the sentencing court should have provided for concurrent federal and state sentences under U.S.S.G. §§ 5G1.3(b) and 5G1.3(c), the District Court properly dismissed his claims for lack of jurisdiction…. We agree with the District Court that [the petitioner's] situation is not the rare one rendering § 2255 inadequate or ineffective."); Smart v. Kirby, 436 F.App'x 64, 65-66 (3d Cir. 2011) (holding that the petitioner could not pursue his claim that his federal sentencing court violated § 5G1.3 in a § 2241 habeas petition, and finding that § 2255's savings clause did not apply); Middleton v. Ebbert, 302 F.App'x 68, 69-70 (3d Cir. 2008) (same).

### C.     Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that that the petition for a writ of habeas corpus be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

<u>/s/ Susan Paradise Baxter</u>  
SUSAN PARADISE BAXTER  
United States Magistrate Judge

Dated: February 20, 2013

cc: The Honorable Sean J. McLaughlin  
     United States District Judge